**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| EVANGELICAL RETIREMENT HOMES | § | Case No. 23-07541 |
| OF GREATER CHICAGO, | § | |
| INCORPORATED d/b/a FRIENDSHIP | § | |
| VILLAGE OF SCHAUMBURG, | § | |
| | § | |
| FEIN: 36-2815382, | § | |
| | § | |
| Debtor. | § | Hon. Timothy A. Barnes |

**NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR ENTRY OF
ORDER PURSUANT TO 11 U.S.C. § 345 AND § 363(A) AUTHORIZING
CONTINUED USE AND MAINTENANCE OF EXISTING BANK ACCOUNTS,
CASH MANAGEMENT SYSTEM AND BUSINESS FORMS, AND (B) WAIVING
INVESTMENT AND DEPOSIT REQUIREMENTS**

PLEASE TAKE NOTICE that on Tuesday, June 13, 2023, at 1:00 p.m., I will appear before the Honorable Timothy A. Barnes, or any judge sitting in that judge's place, **either** in courtroom 744 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604, or electronically as described below, and present the "Emergency Motion for Order Pursuant to 11 U.S.C. §345 and §363(a) Authorizing Continued Use and Maintenance of Existing Bank Accounts, Cash Management System and Business Forms, and (b) Waiving Investment and Deposit Requirements" filed by Evangelical Retirement Homes of Greater Chicago, Incorporated d/b/a Friendship Village of Schaumburg, debtor and debtor in possession herein, a copy of which is attached.

**All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government.**

You may appear electronically by video or by telephone.

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 1604286771, and the passcode is 533262. The meeting ID and passcode can also be found on the judge's page on the court's web site.

2023-6-2

In addition to other grounds for opposing the Motion, you may oppose the motion on the basis that emergency treatment is not appropriate.

Dated: June 9, 2023

EVANGELICAL RETIREMENT HOMES
OF GREATER CHICAGO, INCORPORATED,
d/b/a FRIENDSHIP VILLAGE OF
SCHAUMBURG

By:   /s/ Bruce Dopke
Proposed counsel for the Debtor

Bruce Dopke, Member (ARDC # 3127052)
Dopkelaw LLC
1535 W. Schaumburg Road, Suite 204
Schaumburg, IL   60194
Tel: 847-524-4811
bd@dopkelaw.com

2023-6-2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EVANGELICAL RETIREMENT | ) | Case No. 23-07541 |
| HOMES OF GREATER CHICAGO, | ) | |
| INCORPORATED d/b/a FRIENDSHIP | ) | |
| VILLAGE OF SCHAUMBURG, | ) | |
| | ) | |
| FEIN: 36-2815382 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Clarissa D. Cu, depose and say that I am employed by Stretto, the proposed claims and noticing agent for the Debtor in the above-captioned case.

On or before 5:00 p.m. (prevailing Central Time) on June 9, 2023, at my direction and under my supervision, employees of Stretto will cause to be served a complete and accurate copy of the attached Notice of Motion and the document referred to therein to be made on the parties on the service list attached hereto as **<u>Exhibit A</u>** via overnight mail and via electronic mail where available as set forth on **<u>Exhibit B</u>**.

Dated: June 9, 2023

*/s/ Clarissa D. Cu*
Clarissa D. Cu
STRETTO
410 Exchange, Suite 100
Irvine, CA 92602
Telephone: 949.784.0581
Email:TeamFVS@Stretto.com

# **<u>Exhibit A</u>**

STRETTO

**Exhibit A**
Served via Overnight Mail

| Name | Attention | Address 1 | Address 2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Charles Schwab & Co., Inc. | Attn Officer/Director or Legal Dept | 1945 Northwestern Drive | | El Paso | TX | 79912 |
| Chuhak & Tecson as Counsel to Secured Creditor | Attn Brandon R. Freud | 120 S. Riverside Plz., Suite 1700 | | Chicago | IL | 60606-7512 |
| Cook County Treasurer's Office | Attn Officer/Director or Legal Dept | 118 North Clark Street, Room 112 | | Chicago | IL | 60602 |
| Illinois Department of Financial and Professional Regulation | Attn Officer/Director or Legal Dept | 555 West Monroe Street, 5th Floor | | Chicago | IL | 60661 |
| Illinois Department of Human Services | Attn Officer/Director or Legal Dept | 401 South Clinton Street | | Chicago | IL | 60607 |
| Illinois Department of Public Health | Att. Director | 69 Washington Street | | Chicago | IL | 60602 |
| Illinois Department of Public Health | Attn Officer/Director or Legal Dept | 122 S. Michigan Avenue, 7th & 20th Floors | | Chicago | IL | 60603 |
| Illinois Department of Revenue | Bankruptcy Unit | PO Box 19037 | | Springfield | IL | 62794-9037 |
| Illinois Department of Revenue | David Harris - Director | 555 West Monroe Street | Suite 1100 | Chicago | IL | 60661 |
| Illinois Finance Authority | Attn Officer/Director or Legal Dept | 160 N. LaSalle St., Suite S-1000 | | Chicago | IL | 60601 |
| Internal Revenue Service | Attn. Centralized Insolvency Operation | P.O. Box 7346 | | Philadelphia | PA | 19101 |
| Office of the United States Trustee | Jeffrey L. Gansberg | 219 S. Dearborn Street | Room 873 | Chicago | IL | 60604 |
| Resident 14000-IL | | Address on File | | | | |
| Resident 15101-IL | | Address on File | | | | |
| Resident 15166-IL | | Address on File | | | | |
| Resident 15264-AL | | Address on File | | | | |
| Resident 15306-IL | | Address on File | | | | |
| Resident 15397-IL | | Address on File | | | | |
| Resident 15400-IL | | Address on File | | | | |
| Resident 15404-IL | | Address on File | | | | |
| Resident 15410-IL | | Address on File | | | | |
| Resident 15438-IL | | Address on File | | | | |
| Resident 15479-IL | | Address on File | | | | |
| Resident 15489-IL | | Address on File | | | | |
| Resident 15497-IL | | Address on File | | | | |
| Resident 718487-IL | | Address on File | | | | |
| Resident 719355-IL | | Address on File | | | | |
| Resident 720136-IL | | Address on File | | | | |
| Resident 720451-IL | | Address on File | | | | |
| Resident 720732-IL | | Address on File | | | | |
| Resident 720953-IL | | Address on File | | | | |
| Schaumburg Bank & Trust Company N.A. | Teresa Faidley | 1180 E. Higgins Rd. | | Schaumburg | IL | 60173 |
| The U.S. Department of Health & Human Services | Attn Officer/Director or Legal Dept | 200 Independence Avenue, S.W. | | Washington | DC | 20201 |
| U.S. Centers for Medicare & Medicaid Services | Attn Officer/Director or Legal Dept | 7500 Security Blvd | | Baltimore | MD | 21244 |
| UMB Bank | Brian Krippner | 2 South Broadway | | St. Louis | MO | 63102 |
| UMB Bank, NA, in its capacity as Bond Trustee | c/o Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. | Attn: Daniel S. Bleck | 1 Financial Center | Boston | MA | 02111-0000 |
| United States Attorney's Office Northern District of Illinois, Eastern Division | Attn Officer/Director or Legal Dept. | 219 S. Dearborn Street, 5th Floor | | Chicago | IL | 60604 |
| Verdant Comm Cap Titling Trust | Attn: Officer/Director or Legal Dept | 12301 Whitewater Drive, Ste. 80 | | Minnetonka | MN | 55343 |
| Wells Fargo Bank, National Association, as Master Trustee | Attn Officer/Director or Legal Dept | 230 W. Monroe Steet | Suite 2900 | Chicago | IL | 60606 |
| Wells Fargo Bank, National Association, as Master Trustee | Attn: Corbin B Connell | 600 S. 4th Street, 6th Floor | MAC N9300-061 | Minneapolis | MN | 55479 |
| Wells Fargo Bank, National Association, as Mortagee | Attn Officer/Director or Legal Dept | 230 W. Monroe Steet | Suite 2900 | Chicago | IL | 60606 |

In re: Evangelical Retirement Homes of Greater Chicago, Inc. dba Friendship Village of Schaumburg (FVS)
Case No. 23-*****

# **Exhibit B**





**Exhibit B**

Served via Electronic Mail

| Name | Attention 1 | Attention 2 | Email |
|---|---|---|---|
| Chuhak & Tecson as Counsel to Secured Creditor | Attn Brandon R. Freud | | bfreud@chuhak.com |
| Cook County Treasurer's Office | Attn Officer/Director or Legal Dept | | LBankruptcy@cookcountytreasurer.com |
| Office of the United States Trustee | Jeffrey L. Gansberg | | Jeffrey.L.Gansberg@usdoj.gov |
| UMB Bank, NA, in its capacity as Bond Trustee | c/o Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. | Attn: Daniel S. Bleck | dsbleck@mintz.com |

In re: Evangelical Retirement Homes of Greater Chicago, Inc. dba Friendship Village of Schaumburg (FVS)
Case No. 23-*****

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| EVANGELICAL RETIREMENT | § | Case No. 23-***** |
| HOMES OF GREATER CHICAGO, | § | |
| INCORPORATED d/b/a FRIENDSHIP | § | |
| VILLAGE OF SCHAUMBURG, | § | |
| | § | |
| FEIN: 36-2815382, | § | |
| | § | |
| Debtor. | § | Hon. |

**EMERGENCY MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 345
AND § 363(A) AUTHORIZING CONTINUED USE AND MAINTENANCE OF
EXISTING BANK ACCOUNTS, CASH MANAGEMENT SYSTEM AND BUSINESS
FORMS, AND (B) WAIVING INVESTMENT AND DEPOSIT REQUIREMENTS**

Evangelical Retirement Homes of Greater Chicago, Incorporated d/b/a Friendship Village

of Schaumburg ("**FVS**" or the "**Debtor**"), debtor and debtor-in-possession in the above-captioned

chapter 11 case, for its "Emergency Motion for Order Pursuant to 11 U.S.C. §345 and §363(a)

Authorizing Continued Use and Maintenance of Existing Bank Accounts, Cash Management

System and Business Forms, and (b) Waiving Investment and Deposit Requirements" (the

"**Motion**") respectfully states as follows.

**Background, Jurisdiction, Venue and Statutory Authority**

1.       FVS owns and operates a continuing care retirement community ("**CCRC**") located

in Schaumburg, Illinois known as Friendship Village of Schaumburg (the "**Campus**"). The

Campus is improved with buildings which include (i) 537 independent living apartments, (ii) 84

assisted living apartments, (iii) 25 memory care apartments, (iv) 169 nursing beds, and (v) related

common areas and parking. Approximately 635 senior citizens reside at the Campus

("**Residents**").

1

2.      The factual background regarding the Debtor and the events leading to the filing of this Case (as defined below) is set forth in the Declaration of Mike Flynn, Chief Executive Officer of the Debtor in Support of the Debtor's First Day Pleadings (the "**First Day Declaration**"), which is filed contemporaneously herewith and incorporated herein by reference.[1]

3.      On June 9, 2023, (the "**Petition Date**"), the Debtor filed this bankruptcy case (the "**Case**") with this Court (the "**Court**") under Chapter 11 of Title 11 of the United States Code 11 U.S.C. §101 et seq. (the "**Bankruptcy Code**").

4.      So far in this Case, no request has been made for the appointment of a trustee or examiner.

5.      So far in this Case, no committee of unsecured creditors has been appointed in this Case under section 1102 of the Bankruptcy Code.

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

7.      The Debtor has operated its business and managed its property as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

8.      The statutory bases for the relief requested herein are Sections 345 and 363(a) of the Bankruptcy Code (11 U.S.C. § 345 and § 363(a)).

9.      The Debtor's business is a "health care business" within the meaning of 11 U.S.C. § 101(27A) (hereinafter, e.g., Section 101(27A) of the Bankruptcy Code).

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to such terms in the First Day Declaration.

2023-6-7a

**Relief Requested**

10.    By this Motion, the Debtor seeks the entry of an interim (the "**Interim Order**") and

final order (the "**Final Order**"), substantially in the forms attached to this filing through the

Court's ECF system, which:

a.   authorizes the Debtor to continue to use its cash management system (the "**Cash Management System**") in the ordinary course of its business, including opening additional accounts and closing any existing Account (as defined below) in the Debtor's sole discretion without the need to seek further order of the Court; *provided, however*, that the Debtor shall provide notice to the U.S. Trustee within five (5) business days of opening any new account(s);

b.   authorizes but not directs continued use of the Debtor's: (i) existing deposit, checking, concentration, escrow and investment accounts (the "**Accounts**") (as well as authorizing the Debtor to open and close new bank and investment accounts as appropriate); and (ii) existing business forms, including without limitation checks, deposit slips, letterhead, contracts, purchase orders, and invoices (the "**Business Forms**");

c.   authorizes and directs Schaumburg Bank & Trust Company, N.A. (the "**Bank**") to continue to maintain, service, and administer the Accounts and to debit the Accounts in the ordinary course of business; provided, however, that the Debtor shall take all reasonable steps to stop payment on any checks, drafts, wires, or ACH transfers drawn or issued by the Debtor before, but which did not clear the Accounts prior to, the Petition Date, except checks approved to be paid by an order of this Court.

d.   authorizes the Debtor to continue to pay the Bank the service charges and other fees, costs, and expenses that the Bank charges in the ordinary course of business (collectively, the "**Bank Fees**") and further authorize the Bank to chargeback returned items to the Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

e.   authorizes the Debtor to continue to use its existing Business Forms without alteration or change;

f.   modifies certain requirements of the U.S. Trustee's Guidelines concerning section 345(b) of the Bankruptcy Code conditioned on Debtor's compliance with the following:  the Debtor is authorized (but is not required) to maintain and use the Operating Account for so long as the balance of funds in that account remains at or below $250,000.00, and if the balance of funds in the Operating Account  exceeds $250,000.00, the Debtor will have ten (10) business days to return the balance in the Operating Account to $250,000.00 or

3

less by either (a) allowing the normal payment cycle to deplete the overage; (b) depositing the excess cash over $250,000.00 into another account which carries federal deposit insurance (either FIDC or SIPC) or (c) transferring the excess funds to an institution which is on the "approved" list of the US Trustee's program; and

g.  authorizes but does not direct continued intercompany funding of FVS' operations through the existing Cash Management System, including the use of post-petition intercompany transactions (the "**Intercompany Transactions**"), and preserving set-off rights among the Debtor and its non-debtor affiliate(s), including FSO (as defined below); *provided, however*, that the Debtor shall (a) continue to maintain current records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced and properly recorded on applicable intercompany accounts, (b) implement accounting procedures to distinguish between prepetition and postpetition Intercompany Transactions and (c) assure that no pre-petition claims which the Debtor's affiliates may have against the Debtor are paid by the Debtor directly or indirectly through the Cash Management System absent the entry of an order of court which authorizes such pre-petition claims to be paid.

### Facts Specific to Relief Requested

### The Debtor's Accounts

11.    Debtor owns the following Accounts:

a.    A checking account with the Bank, whose address is 9801 W. Higgins, Box 32, Rosemont, IL  60018), which account's last four digits are 1095, with a balance of $20,000.00 on the Petition Date (the "**Operating Account**");

b.    A concentration account with the Bank, whose purpose is to receive payments from the Centers for Medicare and Medicaid Services which account's last four digits are 4931, with a balance of $0 on the Petition Date (the "**Concentration Account**");

c.    An escrow account (the "**Escrow Account**") which FVS maintains with TMI Trust Company, a Florida trust company, the Escrow Agent (the "**Escrow Agent**"), pursuant to the terms and conditions of that certain Escrow Agreement (the "**Escrow Agreement**") dated as of April 17, 2023, which escrow account currently contains option deposits totaling $2,237,900.00 placed by fourteen (14) Residents and prospective Residents;

d.    Schwab One Account ending in -832 ("**Schwab Account -832**") which contains securities valued at $1,411,330.02 on June 2, 2023, which account is unpledged to any lienholder;

4

e.  Schwab One Account ending in -290 ("**Schwab Account -290**") which contains securities valued at $4,112.90 on June 2, 2023, which account is unpledged to any lienholder;

f.  a Schwab One Account ending in -078 ("**Schwab Account -078**") which contains securities valued at $1,860,872.24 on June 2, 2023.  Schwab Account -078 has been pledged to Schaumburg Bank & Trust Company, N.A. (the "**Bank**") pursuant to an account pledge agreement November 18, 2016 entered between Debtor and the Bank, and a pledged asset account agreement dated November 18, 2016 entered between Schwab and the Bank, to secure advances made by the Bank relative to the Debtor's self-funded workers compensation plans.  The Bank holds a first priority security interest in the assets held in Schwab Account -078.  Schwab Account -078 is not encumbered by the security interests held by the Bond Trustee.  The Debtor does not, by this Motion or otherwise, propose to use any of the cash collateral in Schwab Account -078 except as may be needed by its workers compensation plans and with the Bank's consent, or the termination and windup of that workers compensation plan pursuant to the terms of that plan and the security interests held by the Bank in Schwab Account -078 (and Schwab Account -832, Schwab Account -290 and Schwab Account -078 shall sometimes be collectively referred to as the "**Schwab Accounts**.").

12.    The Escrow Account complies with section 345(b) of the Bankruptcy Code because the Escrow Agent maintains the proceeds of option deposits at PNC Bank which is an "approved" depository on the list maintained by the US Trustee in this district.

13.    The United States Trustee has advised the Debtor that the three Schwab Accounts are subject to the requirements of 11 U.S.C. §345.  The Debtor disagrees with this overbroad reading of Section 345.  The section itself refers to "money" of estates and "investment" of money of estates.  Securities and Bonds are investment property.  Investment accounts (which are a form of investment property) have their own insurance under the Securities Investor Protection Corporation ("**SIPC**") ($500,000.00).  Also, Schwab Account -078 is part of the Debtor's self-funded workers compensation plan.  The Schwab Accounts are not within the US Trustee's regulatory scope.

2023-6-7a

14.     The Concentration Account exists to facilitate the regulations of the Centers for Medicare and Medicaid Services ("CMS").  Deposits of CMS Receivables are wired into the Concentration Account, and the funds are transferred to the Operating Account at the end of each month.  The balances are low at the beginning of the month and the account balances were between $0 at the beginning of May 2023, $575,155 on May 26 when a large payment was made, and $0 on May 31, 2023.  On the few days of the week when balances are high, the daily sweep moves the funds to the Operating Account, which should minimize any concerns associated with the Debtor's continued use of the account.  On the other hand, if the Debtor closed the account, this action is likely to lead to interruptions in the Debtor's receipt of much needed funds.

15.     The US Trustee administers a program which is based on section 345(b) of the Bankruptcy Code, which concerns monies of bankruptcy estates.  The Debtor is informed by the US Trustee that the program is designed to protect the funds of bankruptcy estates from potential bank failure.  The program identifies banking institutions which are willing to backstop the standard $250,000.00 deposit insurance offered by the Federal Deposit Insurance Corporation (the "**FDIC**") with an additional surety bond supported by collateral posted by the applying banking institution.  A copy of the "Depository Agreement" which is signed by applicants to the program is attached to this Motion as **Exhibit A**.  The Depository Agreement, in paragraph 3, indicates that the bankruptcy court has authority to moderate or perhaps nullify the provisions of the application which call for the applicant to post securities in support of the surety bond which the program requires from applicants for "approved" status in the US Trustee's program.

16.     The Bank is not on the list of "approved" depositories maintained by the US Trustee.  The US Trustee has asked the Debtor to either move its banking relationship elsewhere or encourage the Bank to apply for "approved" status.  The Debtor has asked the Bank to consider

6

making an application for "approved" status. The Bank, which is a part of the Wintrust financial companies, may or may not choose to apply.

17.    The Debtor would like to keep the estate's funds in the Operating Account for the present, and for good reason. The Debtor receives electronic payments and payments by mail from insurance companies and private individuals, among other payors. If the Debtor is forced to close the Operating Account and open a new account at another depository bank, there is a good chance that payments from all of the above sources would be delayed or paused, as account debtors consider their rights and ability to delay or withhold cash payments which the Debtor desperately needs, and while deposits are delayed due to the need to reestablish their electronic payment systems with the Debtor's new system.

18.    The US Trustee's program is a way to protect the monies of the Debtor's estate. But it is by no means the only way to protect the Debtor's estate from bank failure. The Debtor proposes that the Court should enter an order which authorizes the Debtor to maintain and use the Operating Account for so long as the balance of funds in that account remain at or below $250,000.00 and should the balance of funds in the Operating Account ever exceed $250,000, the Debtor may (but is not required), within five (5) business days of the overage, allow the balance in the Operating Account to reduce to $250,000.00 or less by (a) allowing the normal payment cycle to return the balance in the account to $250,000.00 or less; (b) deposit the excess cash over $250,000.00 in the Operating Account into another account which carries federal deposit insurance (either FIDC or SIPC);  or (c) transfer the excess funds to an institution which is on the "approved" list of the US Trustee's program. In addition, the Concentration Account and the Schwab Accounts would remain in place and continue its operations as they now exist.

**Regular Disbursements Under Debtor's Cash Management System**

7

2023-6-7a

19.    The employees who work at the Campus are not employed by the Debtor.  Instead, they are employed by the Debtor's corporate manager, Friendship Senior Options, NFP ("**FSO**"), which leases the services of the employees to the Debtor, which, in turn pays FSO for the costs of wages and salary, benefits and taxes through the Cash Management System.

20.    FSO provides the Debtor with certain goods and services such as accounting services, billing and collection services, Human Resources, IT, Purchasing and contracting for insurance, contracting with clinical assessment coordinators, among others.  In the cash collateral budgets used in this Case (the "**Budget**"), expenditures which are labeled in the Budget as "Management Fees" are actually payments for shared services, goods and other needed items which FSO has sold, leased or otherwise provided to the Debtor.  The Intercompany Transactions which the Debtor pays FSO are recorded by FSO and FVS to their respective intercompany accounts, which they reconcile at the end of each month.  These Intercompany Transactions allow FVS, among other things, to meet the needs of Residents and maintain a centralized corporate administration in an efficient and cost-effective manner.

21.    In addition to the goods and services which the Debtor receives from FSO, the Debtor also directly contracts with many vendors and creditors.  The disbursement procedures under the Cash Management System for these vendors or other creditors, with one exception, are the same.  First, the Debtor identifies bills to be paid (usually on Thursdays).  Next, Debtor transfers a deposit to FSO to pay those bills.  Then, FSO promptly pays the bills, in the amounts designated by the Debtor, from FSO's accounts.  Only one creditor of the Debtor regularly receives payment by ACH directly from Debtor, paid from the Operating Account.  Rarely, a vendor will ask for payment by ACH or wire transfer, and Debtor will comply with such requests.  But requests such as these are rare.

8

22.     In the ordinary course of business, the Debtor uses the Cash Management System to efficiently collect, transfer, and disburse funds generated by the Debtor's business operations. The Cash Management System facilitates the Debtor's cash monitoring, forecasting, and reporting. The Debtor accurately records all collections, transfers, and disbursements made through the Cash Management System as they are made.

23.     The Debtor's business operations are sizable and complex.  If the U.S. Trustee's requirements were strictly enforced in this Case, undue disruption would result to the Debtor's finances and business operations (especially CMS Payments) and the Debtor's efforts in Chapter 11 could be negatively impacted as well.  In order to continue its operations for the short time in which operations will be needed and preserve the value of its business, the Debtor must be able to continue conducting "business as usual" to the maximum extent possible.

24.     The Debtor's financial operations also permit it to distinguish pre-petition and post-petition transactions and generate detailed and accurate financial reports without closing the Accounts and reopening new ones.

25.     As indicated in other motions which FVS has filed or will file with the Court contemporaneously with this Motion, FVS plans to sell the Campus in a public auction conducted in this Court.  The procedures which FVS seeks to put in place are designed to facilitate a public auction of the Campus on or about October 3, 2023.  Given the expected duration of the Debtor's anticipated operations in Chapter 11, the harm and disruption which would likely occur if the Debtor was required to unwind its financial system and amend its Business Forms outweighs any potential harm which may come from the granting of the relief requested in this Motion.

**<u>Basis for Relief</u>**

9

26.     Bankruptcy courts have recognized that strict enforcement of bank account closing requirements may not always be an efficient use of a debtor's time and resources during the initial stages of a Chapter 11 case.  As a result, courts in this district and other districts routinely waive the strict enforcement of bank account closing requirements and replace them with alternative procedures that provide the same protection.  *See, e.g., In re Clare Oaks, No.* 19-16708-PSH (Bankr. N.D. Ill. June 13, 2019) [Dkt. 32]*; In re AcuSport Corporation*, No. 18-52736-JEH (Bankr. S.D. Ohio May 21, 2018) [Dkt. 123]; *In re Senior Care Centers, LLC, et al.*, No. 18-33967-BJH (Bankr. N.D. Tex. Dec. 7, 2018) [Dkt. 72]; *In re ITR Concession Co.*, No. 14-34284-PSH (Bankr. N.D. Ill. Oct. 28, 2014) [Dkt. 185]; *In re Edison Mission Energy*, No. 12-49219-JPC (Bankr. N.D. Ill. May 15, 2013) [Dkt. 768]; *In re River Road Hotel Partners, LLC*, No. 09-30029-BWB (Bankr. N.D. Ill. Aug. 20, 2009) [Dkt. 30]; *In re Kimball Hill, Inc.*, No. 08-10095-SPS (Bankr. N.D. Ill. May 13, 2008) [Dkt. 175]; *In re UAL Corp.*, No. 02-48191-ERW (Bankr. N.D. Ill. Dec. 9, 2002). Based on the foregoing, good cause exists to waive the U.S. Trustee's requirements, which relief would be in the best interest of the Debtor's estate.  No creditor or party-in-interest would be prejudiced in any way by granting of the relief requested.

27.     Therefore, the Debtor requests that the Accounts be deemed as debtor-in-possession accounts and that the Debtor be authorized to maintain and continue the use of its existing financial operations with its existing Accounts in the same manner and with the same account numbers, styles and forms as those employed before the Petition Date.

**Authority to use the Cash Management System**

28.     The continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

2023-6-7a

Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).

29.    In other chapter 11 cases, courts in this and other districts often waive the U.S. Trustee Guidelines' requirement that Debtor establish new post-petition cash management systems, recognizing that they may harm a debtor's post-petition business operations and restructuring efforts to an extent that is out of proportion to the benefit, if any, the requirements afford the debtor's estate or parties in interest. *See, e.g., In re Timothy Place*, NFP, Case No. 16-1336 (JPC) (Bankr. N.D. Ill. Feb 17, 2016); *In re ITR Concession Company, LLC*, No. 14-34284 (PSH) (Bankr. N.D. Ill. Sep. 21, 2014) (authorizing Debtor to maintain existing cash management system, irrespective of whether banks were designated as authorized depositories by U.S. Trustee); *In re XMH Corp. 1 (f/k/a Hartmarx Corp.)*, No. 09-02046 (BWB) (Bankr. N.D. Ill. Jan. 26, 2009) (same); *In re McLeodUSA Inc.*, No. 05-63229 (JHS) (Bankr. N.D. Ill Oct. 31, 2005) (same); *In re UAL Corp.*, No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002) (same); *In re Nat' l Steel Corp.*, No. 02-08699 (JHS) (Bankr. N.D. Ill. Mar. 6, 2002) (same); *In re Kmart Corp.*, No. 02-02474 (SPS) (Bankr. N.D. Ill. Jan. 25, 2002) (same); *In re Comdisco, Inc.*, No. 01-24795 (RB) (Bankr. N.D. Ill. July 17, 2001) (same); *In re Outboard Marine Corp.*, No. 00-37405 (JETS) (Bankr. N.D. Ill. Jan. 4, 2001) (same).

30.    Accordingly, the Debtor respectfully requests that the Court authorize the continued use of the existing Cash Management System to facilitate operations at the Campus. Specifically, the Debtor requests that the Court authorize the Bank to continue to maintain, service, and administer the Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course of business, irrespective of whether such Accounts are held at Bank

2023-6-7a

identified by the U.S. Trustee as authorized depository institutions. The Debtor further respectfully requests that the Court authorize and direct the Bank to receive, process, honor, and pay any and all checks, wire transfers, credit cards, ACH payments and other instructions, and drafts payable through, drawn, or directed on such Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, credit card, or ACH payments are dated prior to or subsequent to the Petition Date. The Debtor also respectfully requests that, to the extent a Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtor or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed liable to the Debtor or to its estate on account of such prepetition check or other item honored post-petition. Such relief is reasonable and appropriate because the Bank is not in a position to independently verify or audit whether the Debtor may pay a particular item in accordance with a Court order or otherwise.

31.    The Debtor respectfully requests that the Court authorize the Debtor to continue to pay the institutions which hold the Accounts the Bank Fees and further authorize the Bank to chargeback returned items to the Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

32.    Finally, the Debtor respectfully requests that the Court authorize the Debtor's credit card processors to process payments in the ordinary course of business, including the netting out of any fees and/or chargebacks arising before, on or after the Petition Date.

**Authority to Use Existing Business Forms and Checks**

33.    To minimize administrative burden on the Debtor and expense to its bankruptcy estate and to reduce disruption and confusion among the Debtor's employees, customers, and

2023-6-7a

suppliers, the Debtor also requests authority to continue using its existing business forms without alteration or change, including checks, deposit slips, letterhead, contracts, purchase orders, and invoices.

34.    No creditor or party-in-interest would be prejudiced by the Debtor's continued use of existing business forms, because parties doing business with the Debtor will receive a notice of this Case as well as other documents and pleadings filed throughout the course of these proceedings.  Also, the Debtor has generally no need of using checks if the Debtor is allowed to use the Cash Management system, as requested in this Motion.

35.    Courts in this district and other districts have consistently allowed debtors to use their prepetition forms without the "Debtor-in-Possession" label.  *See, e.g., In re AcuSport Corporation*, No. 18-52736-JEH (Bankr. S.D. Ohio May 21, 2018) [Dkt. 123]; *In re ITR Concession Co.*, No. 14-34284-PSH (Bankr. N.D. Ill. Oct. 28, 2014) [Dkt. 185]; *In re Edison Mission Energy*, No. 12-49219-JPC (Bankr. N.D. Ill. May 15, 2013) [Dkt. 768]; *In re River Road Hotel Partners, LLC*, No. 09-30029-BWB (Bankr. N.D. Ill. Aug. 20, 2009) [Dkt. 30]; *In re Kimball Hill, Inc.*, No. 08-10095-SPS (Bankr. N.D. Ill. May 13, 2008) [Dkt. 175].  The Debtor respectfully submits that such relief should be granted here.

**Compliance with the Requirements of Bankruptcy Rules 6003(b) and 6004(a) and (h).**

36.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  To avoid immediate and irreparable harm to the Debtor's business, the Debtor asks the Court to waive this notice requirement on an interim basis, pending the final hearing on this Motion.

13

37.     To the extent that any aspect of section 363(b) of the Bankruptcy Code applies to the relief requested in this Motion, the Debtor seeks waiver of the notice requirements of Bankruptcy Rule 6004(a), the restriction imposed by Bankruptcy Rule 6003(b), and the fourteen-day stay established by 6004(h).  For the reasons stated above, the requested relief should be granted in order to avoid immediate and irreparable harm to the Debtor, its estate, creditors and parties-in-interest.

## Notice

38.     Notice of this Motion has been served on the following parties or, in lieu thereof, to their counsel, if known: (i) the United States Trustee for the Northern District of Illinois; (ii) the United States Attorney for the Northern District of Illinois; (iii) counsel for the Bond Trustee; (iv) the Debtor's secured creditors, if any; (v) the Internal Revenue Service; (vi) the Illinois Department of Revenue; (vii) the United States Department of Health and Human Services; (viii) the Illinois Department of Human Services; (ix) the Illinois Finance Authority; (x) the Centers for Medicare and Medicaid Services; (xi) the Illinois Department of Financial and Professional Regulation; (xii) the Illinois Department of Public Health; (xiii) the holders of the twenty largest unsecured claims against the Debtor; (xiv) those who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002; (xv) the Escrow Agent and (xvi) the Bank.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice need be given.

## No Prior Request

39.     No prior request for the relief sought in the Motion has been made to this or any other Court.

## Reservation of Rights

2023-6-7a

40.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtor expressly reserves the right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to subsequently dispute such claim.

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially in the form filed with the Clerk concurrently with this Motion, which: (a) grants the relief requested in this Motion; (b) to the extent necessary or required, shortens and restricts the notice of the initial hearing on this Motion to the date and time (and to the parties) who received such notice of the initial hearing, as reflected in the certificate of service to the notice of motion which is appended hereto; and (c) grants such other relief as the Court deems appropriate under the circumstances.

Dated: June 8, 2023

EVANGELICAL RETIREMENT HOMES
OF GREATER CHICAGO, INCORPORATED,
d/b/a Friendship Village of Schaumburg,  Debtor
and Debtor-in-Possession


By:  /s/ Bruce Dopke
Proposed Counsel for the Debtor



Bruce Dopke, Member (ARDC # 3127052)
Dopkelaw LLC
1535 W. Schaumburg Road, Suite 204
Schaumburg, IL  60194
Tel: 847-524-4811
bd@dopkelaw.com

8/6/2012

*UNITED STATES TRUSTEE PROGRAM*
*UNIFORM DEPOSITORY AGREEMENT*
*FOR TRUSTEE AND DEBTOR IN POSSESSION ACCOUNTS*

---

## DEPOSITORY AGREEMENT

_____ ("Depository") enters into this Depository Agreement ("Agreement") with the United States Trustee for Region _____ ("UST"), regarding, among other things, the collateralization of Bankruptcy Funds (as that term is defined below) on deposit at Depository.

## RECITALS

WHEREAS, Depository maintains, or desires to maintain, deposits of funds which are money of bankruptcy estates, including chapter 12 and 13 trustee operating expense funds, ("Bankruptcy Funds"), in cases administered under the provisions of title 11, United States Code ("Bankruptcy Code"), under the jurisdiction of the United States Bankruptcy Court for the _____ District(s) of _____; and

WHEREAS, pursuant to 28 U.S.C. § 586(a)(3), UST supervises the administration of cases, debtors in possession,  and trustees in cases filed under chapters 7, 11, 12, and 13 of the Bankruptcy Code, and thereby oversees Bankruptcy Funds maintained in deposit accounts at financial institutions ("Bankruptcy Accounts");

## AGREEMENT

NOW THEREFORE, in consideration of the deposit of Bankruptcy Funds with Depository and the mutual covenants and agreements contained herein, and intending to be legally bound, Depository and UST agree as follows:

1. Depository represents and warrants its deposits are insured by the Federal Deposit Insurance Corporation (FDIC).

2. Depository shall maintain all Bankruptcy Accounts in accordance with 11 U.S.C. § 345, any other applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, and any applicable order of the United States Bankruptcy Court served on the Depository.

3. At all times during which this Agreement is in effect, Depository shall maintain collateral, unless an order of the United States Bankruptcy Court provides otherwise, in an amount no less than 115% of the aggregate Bankruptcy Funds on deposit in each Bankruptcy Account which exceeds the FDIC insurance limit ("Amount to Be Collateralized" or "ATBC") by (i) Surety Bond, in a form acceptable to and from a company approved by the UST in accordance with 11 U.S.C. § 345(b)(1), or (ii) deposit of securities in accordance with 11 U.S.C § 345(b)(2).  See paragraph 17 for provisions relating to the deposit of securities.

8/6/2012

*UNITED STATES TRUSTEE PROGRAM*
*UNIFORM DEPOSITORY AGREEMENT*
*FOR TRUSTEE AND DEBTOR IN POSSESSION ACCOUNTS*

---

4.  The ATBC is determined by adding all Bankruptcy Funds on deposit in excess of the FDIC insurance limit, computed as follows:

    a.  <u>Chapter 11 Debtor in Possession</u> - Multiple deposit accounts of a single chapter 11 debtor in possession ("Debtor in Possession") bankruptcy case are to be combined for purposes of computing whether Bankruptcy Funds exceed the FDIC insurance limit.

    b.  <u>Chapter 7 Trustee, Chapter 11, 12, or 13 Trustee Appointed On a Case by Case Basis, Examiner or Custodian</u> - A chapter 7 trustee, a chapter 11, 12, or 13 trustee appointed on a case by case basis, an examiner, or a custodian (each referred to herein as a "Trustee" and, collectively, as "Trustees") shall be treated as a separate depositor for each case if the  formal name on the deposit account refers to a separate case.  For example, "Joe Smith, Trustee for the Estate of XYZ Corporation," is a different depositor than "Joe Smith, Trustee for the Estate of ABC Corporation" and these accounts are not combined for purposes of computing whether Bankruptcy Funds exceed the FDIC insurance limit.

    c.  <u>Chapter 12 or 13 Standing Trustee</u> - Bankruptcy Funds on deposit in chapter 12 or 13 standing trustee ("Standing Trustee") accounts labeled "expense," "payroll," or "operating" are to be aggregated for each Standing Trustee in computing funds which exceed the FDIC insurance limit.  Bankruptcy Funds on deposit in Standing Trustee accounts marked "trust account" or "trustee," in which commingled estate funds are deposited, shall be insured up to $250,000 for each debtor's estate pursuant to 12 C.F.R. § 330.13(c).

5.  In order to determine compliance with this Agreement, Depository shall furnish to  UST at the address shown in paragraph 21:

    a.  A quarterly summary report showing: (1) the total amount of month-end ledger balance of Bankruptcy Funds on deposit; (2) the market value of any required Pledged Securities on deposit at the Federal Reserve Board, or the amount of any required Surety Bond coverage; and (3) a calculation of any required ATBC ("Quarterly Summary Report").  The Quarterly Summary Report is due within 15 calendar days following the end of each calendar quarter.

    b.  A quarterly report of Bankruptcy Accounts, by judicial district, identifying each account, including but not limited to:  checking accounts, savings accounts, certificates of deposit, money market accounts, and collateral accounts; the account name and number; the bankruptcy case number and chapter number; the end of month ledger balance at the end of the calendar quarter, and the amount in excess of the FDIC insurance limit, sorting and subtotaling accounts by Trustee, Standing Trustee, or Debtor in Possession, ("Quarterly Bankruptcy Account Report").  The Quarterly Bankruptcy Account Reports are required even though Depository may not carry any active accounts into which Bankruptcy Funds have been deposited.  All open deposit

8/6/2012

*UNITED STATES TRUSTEE PROGRAM*
*UNIFORM DEPOSITORY AGREEMENT*
*FOR TRUSTEE AND DEBTOR IN POSSESSION ACCOUNTS*

---

accounts must be listed, even if the account balance is zero.  The Quarterly
Bankruptcy Account Reports shall be submitted to UST within 15 calendar days
following the end of each calendar quarter.

6.  In the event Depository fails to pay Bankruptcy Funds which are on deposit in
accordance with the terms of the agreement with the depositor after two days' notice of
UST's intention to invoke this paragraph; or in the event of insolvency of the Depository;
or if a receiver, conservator, liquidator, or any other officer is appointed for the purpose
of terminating the business of Depository; or should Depository fail or suspend active
operations, all Bankruptcy Funds on deposit with Depository shall become due and
payable immediately, and UST shall have the right to seek recourse against the Surety
Bond or unilaterally demand turnover and take actual or constructive possession of all
Pledged Securities, as applicable, and without notice to the Depository.  All Surety
Bonds, Pledged Securities, and the proceeds thereof which come into the possession of
UST shall be paid to depositors or held by the UST in trust for depositors, and any
amounts which are in excess of the amount needed to satisfy Depository's obligations to
depositors shall be returned to Depository or its successor in interest, after deducting any
fees and costs necessary to enforce this Agreement and damages or deficiencies caused
by default under this Agreement.

7.  Depository shall not provide favorable treatment to a trustee or employees of a trustee,
either personally or on non-trustee related business, because of the Bankruptcy Accounts.
Favorable treatment includes providing any valuable consideration not provided to all
other personal or businesses Depository customers.  Favorable treatment does not include
providing valuable consideration for use in trustee related business.

8.  Upon presentation of a release signed by the Trustee, Standing Trustee, or Debtor in
Possession, Depository agrees to provide to the UST any and all information or
pertaining to that fiduciary's Bankruptcy Accounts.  That information includes, but is not
limited to, copies of statements, deposit slips, checks and account agreements for all
Bankruptcy Accounts maintained by Trustee, Standing Trustee, or Debtor in Possession
at Depository.

9.  Upon presentation of an order of the court or a consent signed by the Trustee, Standing
Trustee, or Debtor in Possession, Depository agrees to place a hold on any Bankruptcy
Accounts maintained by that fiduciary, thereby blocking all withdrawals and payments of
any kind therefrom, until notified in writing by UST that the hold is to be released by
Depository, or until the hold is released by court order.

10. Depository shall caption bank statements, and to the extent provided by Depository,
deposit slips and check stock (collectively referred to as the "Deposit Account Records"),
for Bankruptcy Accounts as follows:

8/6/2012

*UNITED STATES TRUSTEE PROGRAM*
*UNIFORM DEPOSITORY AGREEMENT*
*FOR TRUSTEE AND DEBTOR IN POSSESSION ACCOUNTS*

---

<u>Chapter 7</u>:  The Deposit Account Records shall contain the case number; case name followed by the word "Debtor," chapter 7 trustee's name, followed by the word "Trustee," and the trustee's mailing address.

<u>Chapter 11</u>: When a trustee has been appointed, unless otherwise ordered by United States Bankruptcy Court, the Deposit Account Records must include the trustee's name, capacity as trustee for the estate, debtor's name, and case number.

<u>Chapter 12 and 13</u>:  The Deposit Account Records in which commingled Bankruptcy Funds are deposited shall contain the words "trust account" or "trustee."

11. Depository agrees to deliver bank statements, cut off as of the end of each calendar month, to the Trustee, Standing Trustee, Debtor in Possession, or UST in whose name the Bankruptcy Account was opened, no later than the fifteenth day of the following calendar month, as follows:

<u>Chapter 7 Trustee</u> – monthly bank statements must be in paper form and must include: (1) canceled original checks; (2) canceled substitute checks; and/or (3) electronic images on paper of both the front and back of each canceled check with no more than four checks (front and back – eight images in total) per statement page.

<u>Chapter 11 Debtor in Possession, Chapter 11, 12, or 13 Trustee Appointed On a Case by Case Basis, and Standing Trustee</u> – monthly bank statements must be in paper form and must include:  (1) canceled original checks, (2) canceled substitute checks, and/or (3) electronic images on paper of both the front and back of each canceled check with no more than four checks (front and back – eight images in total) per statement page.  As an alternative to the paper format described in (1)-(3), electronic images of all of the canceled checks may be provided on unalterable CDs (e.g., read-only and write-protected CD-Rs), with the front and back of the canceled checks segregated by account.

12. Depository agrees to provide a substitute check to a Trustee, Standing Trustee, or Debtor in Possession, upon request.  In addition, if an image of a canceled original check or a canceled substitute check is illegible, Depository will provide a larger, legible image of the check.

13. Depository agrees to provide the Trustee, Standing Trustee, or Debtor in Possession, for each account maintained, a minimum of thirty (30) days from the date of receipt of each monthly bank statement to:  (i) examine the statement and all canceled checks for alteration and unauthorized use of the Trustee's, Standing Trustee's, or Debtor in Possession's, signature, and (ii) notify Depository of any problem, notwithstanding anything more limiting contained in any signature card, account contract, applicable account rules and regulations, or agreement between the Trustee, Standing Trustee, Debtor in Possession, and Depository.

8/6/2012

### UNITED STATES TRUSTEE PROGRAM
### UNIFORM DEPOSITORY AGREEMENT
### FOR TRUSTEE AND DEBTOR IN POSSESSION ACCOUNTS

14. [THIS SECTION IS INTENTIONALLY LEFT BLANK]

15. Depository agrees and acknowledges that its failure to comply with any of the terms and provisions of this Agreement, may result in the withdrawal of Bankruptcy Funds on deposit with Depository and termination of this Agreement  after three days' notice to the Depository.

16. Depository agrees to designate an officer or employee who shall be available during regular business hours and can be contacted by UST, Trustees, Standing Trustees, or Debtors in Possession.  Depository agrees to notify the account owner and UST in writing any time the designation changes.

17. In addition to all other terms and conditions of this Agreement, the following provisions apply if Depository deposits securities, or has in the past deposited securities, for the ATBC:

   a. Depository shall deposit and maintain with the Federal Reserve Bank ("FRB") securities of the kind listed on the Bureau of Public Debt web site under "Acceptable Collateral for 31 CFR Part 225 (Circular 154)," https://www.treasurydirect.gov/instit/statreg/collateral/collateral_acc225Acceptablecollateral.pdf ("Securities") in accordance with 31 U.S.C.  § 9303, 31 C.F.R. § 225, and 31 C.F.R. § 380. The Securities shall be deposited to the Security Account for UST with the FRB (all such Securities, including any additions thereto and any replacements or substitutions thereof so deposited, are collectively referred to as "Pledged Securities").  The FRB is authorized to act as custodian and accept for deposit Pledged Securities in accordance with this Agreement.  For purposes of determining the value of Pledged Securities under this Agreement, the market value ("Value") of the Pledged Securities shall be used.

   b. Under 31 C.F.R. § 225, UST, as the responsible government "agency" under the regulation, shall determine from time to time the ATBC.  UST shall inform the National Customer Service Area (NCSA) of the Federal Reserve Bank of St. Louis (SL-FRB) or any successor of the SL-FRB, of the appropriate ATBC as determined by UST from time to time in accordance with the terms of this Agreement. Depository acknowledges and agrees that it is obligated to pledge additional securities as necessary to maintain the required percentage of collateralization to ATBC as provided in subparagraph a. above and will pledge the additional securities within two business days following notice of such need by NCSA.

   c. Depository hereby grants to UST a security interest in, and pledges and assigns to UST, the Pledged Securities, including any additions to and replacements or substitutions of such Pledged Securities, as collateral for the payment to depositors of any and all Bankruptcy Funds on deposit with Depository.  The Pledged Securities

8/6/2012

### UNITED STATES TRUSTEE PROGRAM
### UNIFORM DEPOSITORY AGREEMENT
### FOR TRUSTEE AND DEBTOR IN POSSESSION ACCOUNTS

---

shall be held in safekeeping by the FRB for the benefit of the UST and can be released only with UST authorization.

d. Depository warrants that it is the legal and actual owner, free and clear of all liens and claims, of all Pledged Securities.

e. When Bankruptcy Funds on deposit are less than the Value of Pledged Securities, UST shall provide within two business days, upon written request of Depository, the NCSA of the SL-FRB or any successor of the SL-FRB, the new ATBC as determined by the UST in accordance with the terms of this Agreement. After UST provides updated information regarding the ATBC to NCSA, Depository may obtain the release from the SL-FRB of the Pledged Securities in excess of the ATBC.

f. Depository may substitute Securities, acceptable under subparagraph a. above, of which it is the legal and actual owner, free and clear of all liens and claims, for all or any part of the Pledged Securities and acknowledges that all substituted Pledged Securities are subject to the security interest, pledge, and assignment to UST pursuant to this Agreement.

g. If the Depository is notified that Bankruptcy Funds on deposit exceed the Value of Pledged Securities, Depository shall cure such deficiency within two business days after notice thereof.

h. As long as the Depository performs its obligations under this Agreement, the interest earned on the Pledged Securities may be administered for the benefit of Depository in such a manner as Depository and the FRB may agree.

i. In the event of circumstances described in paragraph 6, the UST or the UST's designated agent or representative, shall have full power to obtain turnover of the Pledged Securities, or any part thereof, and to redeem, sell, assign, or transfer the Pledged Securities, or any portion thereof, at any public or private sale or sales at his or her option without advertising such sale or sales after not less than three days' notice to Depository. Said sale shall be free from any equity of redemption, the right to redeem and notice thereof being waived, and without prior appraisal.

j. This Agreement shall supersede any prior depository agreement between the parties, and the terms hereof shall apply to and be binding on all current Pledged Securities deposited under any prior agreement between the parties.

18. This Agreement shall be binding upon Depository and UST and their respective successors and assigns.

19. Depository represents and warrants either (i) that the execution and delivery of this Agreement by the undersigned representative of Depository has been approved and

8/6/2012

*UNITED STATES TRUSTEE PROGRAM*
*UNIFORM DEPOSITORY AGREEMENT*
*FOR TRUSTEE AND DEBTOR IN POSSESSION ACCOUNTS*

authorized by the board of directors of Depository in a corporate resolution adopted by the board, as evidenced by the minutes of said board which are and will continue to be maintained as an official record of Depository in compliance with 12 U.S.C. § 1823(e), or (ii) that the execution and delivery of this Agreement by the undersigned representative of Depository has been ratified and reaffirmed by the board of directors of the Depository in a corporate resolution adopted by the board at a duly called meeting of said board of directors, all as reflected in the minutes of said board which are and will continue to be maintained as an official record of Depository in compliance with 12 U.S.C. § 1823(e).

20. This Agreement may be terminated by either party upon thirty (30) days' written notice of cancellation to the other party.

21. All notices, requests and other communications to any party hereunder shall be in writing, and may be delivered by hand delivery, registered or certified mail, return receipt requested, or by express mail service of the U.S. Postal Service, or other equivalent private overnight or expedited delivery.  Any such notice, request or other communication shall be deemed given and received (i) at the time it is delivered, if delivered by hand delivery; (ii) three days following the date of mailing, if delivered by mail; and (iii) upon receipt, if delivered by overnight or expedited delivery.  For purposes of this Agreement, the address of the parties to this Agreement shall be:

UST:

Depository:

Any party may, by proper written notice to the other party, change the address to which notices shall be sent to it.

22. This Agreement constitutes the entire agreement between the parties and supersedes all prior written or oral agreements or understandings between them with respect to the matters addressed herein.

23. Time shall be of the essence in this Agreement with respect to the Depository's obligations hereunder.

24. To the extent any term or provision of this Agreement conflicts with any provision of any other agreement, signature card, account contract, applicable account rules and regulations between a Trustee, Standing Trustee, Debtor in Possession, and/or UST and Depository, then the term or provision of this Agreement shall control.

**8/6/2012**

*UNITED STATES TRUSTEE PROGRAM*
*UNIFORM DEPOSITORY AGREEMENT*
*FOR TRUSTEE AND DEBTOR IN POSSESSION ACCOUNTS*

25. This Agreement is for the benefit of Depository, UST, Trustees, Standing Trustees, Debtors in Possession, and no others.

The parties, by their respective authorized representatives, execute and deliver this Agreement to be effective on the date that the last party to this Agreement signs it.

I, _____, the duly authorized officer of the Depository named herein, do hereby affirm that I have read the requirements stated above and further certify that Depository has agreed to those requirements.

For the Depository:                          For the United States Trustee, Region

By _____             By _____
        *(Signature)*                                      *(Signature)*
Name                                                  Name
  and Title _____               and Title _____
        *(Printed)*                                       *(Printed)*

Date _____             Date _____