# Exhibit 1

Agreement

93049875.5

**Post-Closing Consulting Agreement (FVS)**

THIS POST-CLOSING CONSULTING AGREEMENT (this "*Agreement*") is made, dated and effective as of December 28, 2023 (the "*Effective Date*") by and between Evangelical Retirement Homes of Greater Chicago, Inc. d/b/a Friendship Village of Schaumburg ("*FVS*") (the "*Company*"), and IL CCRC LLC, a Delaware limited liability company ("*Buyer*"), for services to be provided by the employees of Buyer listed on **Exhibit A** hereto (collectively, the "*Consultants*") pursuant to and in accordance with the terms of this Agreement.

Section 1.     SERVICES

Buyer hereby agrees to have Consultants render consulting services, including, but not limited to, include, those services set forth on **Exhibit B** hereto in accordance with the timelines set forth therein (if any) (collectively, the "*Services*"), to the Company during the Term (as defined below). Consultants will not perform any Services for the Company except as authorized or requested by the Company, as applicable. Buyer agrees that Consultants shall complete the Services in a satisfactory and workmanlike manner. The parties agree that this Agreement does not involve the counseling or promotion of a business arrangement that violates state or federal law.

Section 2.     TERM AND TERMINATION; SCOPE; EFFORT

a. This Agreement is effective as of the Effective Date and will continue in effect until the Services have been substantially completed (the "*Term*"), unless terminated earlier pursuant to Section 2(b) or extended by mutual agreement of the Buyer and the Company.

b. This Agreement may be terminated (i) for cause by either party at any time prior to the end of the Term by such party giving written notice of default and termination setting forth in reasonable detail the basis for the termination and providing the other party with thirty (30) days' opportunity to cure, (ii) automatically by the Company upon the death or disability of all Consultants or (iii) without cause by the Company by providing thirty (30) days' advance written notice to Buyer.

c. Termination of this Agreement shall not affect (i) the Company's obligation to pay for Services rendered by the Consultants or expenses reasonably incurred by the Consultants for which the Buyer is entitled to reimbursement under Section 3 of this Agreement prior to termination, or (ii) the Buyer's continuing obligations to the Company under Sections 5, 6 and 7 of this Agreement.

d. Buyer acknowledges that any timelines listed in **Exhibit B** hereto are of the essence. If Consultants are unable to provide Services in accordance with timelines provided, Buyer shall promptly notify Company. Notice shall not relieve Buyer or Consultants of their obligations under this Agreement, nor shall it prevent Company from pursuing any and all rights and remedies Company may have based on Consultants' failure to timely deliver Services.

e. The Services shall be provided on a non-exclusive basis without any minimum obligation to Company except as specifically agreed to by the parties as set forth in **Exhibit B** hereto.

Section 3.  COMPENSATION

a. As compensation for the Services to be rendered pursuant to this Agreement, the Company shall pay to Buyer the sum of $65 per hour, such sum to be paid within thirty (30) days from receipt of a documented, correct and undisputed invoice from Buyer following the calendar quarter in which the Services were performed detailing Consultants' performed services, the amounts due for Services and reimbursable expenses. Except as set forth elsewhere in this Agreement, neither Buyer nor Consultants shall be entitled to any other compensation or benefits for the Services.

b. The Company shall reimburse the Consultants for actual travel and other out-of-pocket expenses for Services performed pursuant to the Company's prior express written request, reasonably incurred up to a pre-approved amount, after submission of reasonably detailed invoices documenting such expenses. Consultants are responsible for all other travel and other out of pocket expenses incurred in connection with this Agreement.

c. The parties acknowledge and agree that the compensation set forth herein represents the fair market value of the Services provided to the Company by the Consultants, negotiated in an arms-length transaction, and has not been determined in a manner that takes into account the volume or value of any referrals or business otherwise generated between the Company and the Consultants.

d. Buyer acknowledges that, under the provisions of Section 1128G of the Social Security Act, 42 U.S.C. 1320a-7h, as well as applicable state laws, Company may be required to disclose certain payments and other transfers of value provided by the Company to health care professionals and institutions, including payments and reimbursements made or provided by or on behalf of the Company in connection with the Services. Buyer acknowledges that, notwithstanding any provision to the contrary in this Agreement, information about the payments and reimbursements provided hereunder may be disclosed without notice by the Company and may be made publicly available by the recipient federal or state agency, consistent with applicable law. Buyer will provide Company or Company's designee with any information necessary for Company to comply with the foregoing.

e. Nothing contained in this Agreement constitutes or shall be construed in any manner as an obligation or inducement for Buyer or Consultants to recommend the prescribing, purchase, use, or preferential formulary status or dispensing of any of the Company's products or services or those of any organizations affiliated with the Company.

Section 4.  RELATIONSHIP OF THE PARTIES; WARRANTIES; NO CONFLICTS

a. Notwithstanding any provision of this Agreement to the contrary, the Consultants are and shall at all times be independent contractors and not employees, agents, partners, or joint venturers of the Company. The Consultants shall have no right under this Agreement, or as a result of their consulting services to the Company, to participate in any other employee, retirement, insurance or other benefit program of the Company, nor will the Company make any deductions from the Consultants' compensation for taxes, the payment of which shall be solely the Consultants' responsibility.

b. The Buyer shall pay, when and as due, any and all taxes incurred as a result of the compensation provided hereunder, including estimated taxes, and if requested by the

2

        Company, provide the Company with proof of said payments. The Buyer further agrees to indemnify the Company and hold it harmless to the extent of any obligation imposed on the Company: (i) to pay withholding taxes or similar items; or (ii) resulting from the Consultants being determined not to be an independent contractor.

  c.    The Buyer represents and warrants that (a) neither this Agreement nor the performance thereof will conflict with or violate any obligation of the Buyer or right of any third party; (b) the Buyer is responsible for providing workers' compensation coverage for the Consultants and any other employees assisting with the Services; (c) all individuals providing services pursuant to this Agreement either (i) are payroll (Form W-2) employees of Buyer; or (ii) are independent contractors to Buyer, and in either case those individuals are not employees of or independent contractors to Company and the Buyer is solely responsible for compensating such employees, if any; (d) the Buyer has obtained all permits, licenses or certifications necessary to perform the Services; (e) the Buyer will provide Services under this Agreement on a professional and commercially reasonable basis; (f) the performance of Services under this Agreement, including delivery of deliverables, if any, and the use of such deliverables in a manner suggested by, recommended by, or reasonably foreseeable to the Consultants or in a manner intended by the Company and that is known to the Consultants, do not violate the industrial or intellectual proprietary rights of any third party; and (g) the Buyer and the Consultants shall comply with all applicable laws in the performance of the Services.

Section 5.    NONDISCLOSURE OF CONFIDENTIAL INFORMATION

  a.    Buyer and the Consultants will maintain confidential any confidential, proprietary or non-public information of the Company, and Buyer will not, without the prior written consent of the Company, use, disclose, divulge or publish any confidential, proprietary or non-public information of the Company at any time during the term hereof or thereafter except as may be necessary to perform the Services, or except as required by law or subpoena. In the event a court or governmental agency legally compels the Buyer to disclose any confidential, proprietary or non-public information, the Buyer shall promptly inform the Company of the compelled disclosure, so that the Company may seek a protective order or other remedy or waive compliance with this Agreement, or both. Buyer shall limit any compelled disclosure of confidential and proprietary information to that legally required.

Section 6.    RESERVED

Section 7.    INDEMNIFICATION; INSURANCE

  a.    The Company shall indemnify, defend and hold harmless the Buyer from all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, including interest, penalties, attorneys' fees, and costs, for any claims related to the Services provided hereunder, *provided* that the Buyer was not in breach of this Agreement, acted in good faith and in a manner the Buyer reasonably believed to be in the best interests of the Company and, if any criminal proceedings are involved, had no reasonable cause to believe the Buyer's conduct was unlawful. The Company's obligation to advance expenses or provide indemnity hereunder shall be deemed satisfied to the extent of any payments made by an insurer on behalf of the Company or Buyer.

  b.    The Buyer also agrees and undertakes to repay any and all defense costs and expenses which may be advanced by the Company prior to the final disposition of any proceeding

3

    relating to such claim, if a court of competent jurisdiction ultimately shall determine that the Buyer is not entitled to indemnification pursuant to this Agreement or the indemnification is not consistent with any applicable law or regulation.

  c. The Buyer agrees to fully indemnify, defend, and hold the Company free and harmless from all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, including interest, penalties, attorneys' fees, and costs, that the Company may incur as a result of: (i) a breach by the Buyer of any representation or covenant contained in this Agreement; or (ii) any Consultant's negligent acts or omissions or Consultant's willful misconduct. The Buyer's obligation to advance expenses or provide indemnity hereunder shall be deemed satisfied to the extent of any payments made by an insurer on behalf of the Buyer or Company.

  d. The Company also agrees and undertakes to repay any and all defense costs and expenses which may be advanced by the Company prior to the final disposition of any proceeding relating to such claim, if a court of competent jurisdiction ultimately shall determine that the Buyer is not entitled to indemnification pursuant to this Agreement or the indemnification is not consistent with any applicable law or regulation.

  e. Buyer shall carry and maintain, at its own expense, for the duration of this Agreement, appropriate insurance coverage with liability limits sufficient to protect itself and Company from and against any and all claims or liabilities that may arise directly or indirectly as a result of its performance under this Agreement.

Section 8. RIGHTS AND REMEDIES UPON BREACH

 In the event of a breach, the parties shall be entitled the remedies of termination, specific performance, and such other rights and remedies as they may have at law or in equity.

Section 9. MISCELLANEOUS

  a. This Agreement shall be governed in all respects by the laws of the State of Illinois, without regard to any provisions thereof relating to conflict of laws among different jurisdictions.

  b. This Agreement is the entire agreement of the parties with respect to the Services to be provided by the Buyer and supersedes any prior agreements between the parties with respect to the subject matter of this Agreement. This Agreement may only be amended in writing by the Company and the Buyer and their respective permitted successors and assigns.

  d. Neither party may assign, subcontract or otherwise delegate its obligations under this Agreement without the other party's prior written consent. Subject to the foregoing, this Agreement will be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

  e. Either party's failure to enforce any right resulting from a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other or subsequent breach by the other party.

4

295977887 v1
92910212.5

f. All notices required or permitted to be given by one party to the other under this Agreement shall be sufficient if sent by either certified mail return receipt requested, nationally recognized courier, facsimile or hand delivery to the parties at the respective addresses set forth below or to such other address as the party to receive the notice has designated by notice to the other party. All notices shall be effective (i) when delivered personally, (ii) when transmitted by telecopy, electronic or digital transmission with receipt confirmed, (iii) the business day when delivered by a nationally recognized courier, or (iv) upon receipt if sent by certified or registered mail.

    Company:    Evangelical Retirement Homes of Greater Chicago, Inc. d/b/a Friendship Village of Schaumburg ("**FVS**")
350 W. Schaumburg Drive
Schaumburg, Illinois 60194
Attn: Mike Flynn
Email: mflynn@myfso.org

    Buyer:    IL CCRC LLC
120 Craft Street
Inwood, NY 11096
Attention: Avi Satt
E-mail: avi@encorehcs.com

g. If any of the provisions of this Agreement are found to be invalid under an applicable statute or rule of law, they are to be enforced to the maximum extent permitted by law and beyond such extent are to be deemed omitted from this Agreement, without affecting the validity of any other provision of this Agreement.

H. **SUBMISSION TO JURISDICTION AND WAIVER OF JURY TRIAL**. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS IN WHICH COMPANY IS A DEBTOR, AND IF JURISDICTION IS NOT AVAILABLE, THEN TO THE ILLINOIS FEDERAL AND STATE TRIAL AND APPELLATE COURTS WITH JURISDICTION OVER COOK COUNTY, ILLINOIS. EACH PARTY TO THIS AGREEMENT HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE DOCUMENTS RELATED HERETO, ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT OR ANY RELATED TRANSACTIONS.

i. This Agreement may be executed in counterparts, each of which will be deemed an original and all of which together shall constitute one and the same instrument. Notwithstanding anything to the contrary herein, a signed copy of this Agreement delivered by email, or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

j.  The covenants, representations and warranties in this Agreement and those other provisions which, by their nature, are intended to survive termination shall survive the termination of this Agreement.

k.  Buyer hereby acknowledges that it has consulted with legal counsel prior to executing this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

295977887 v1
92910212.5

j.  The covenants, representations and warranties in this Agreement and those other provisions which, by their nature, are intended to survive termination shall survive the termination of this Agreement.

k.  Buyer hereby acknowledges that it has consulted with legal counsel prior to executing this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

295977887 v1
92910212.5

Having understood and agreed to the foregoing, the Company and the Buyer have signed this Agreement as of the day and year written above.

**Company:**                                             **Buyer:**

By: _____        By: _____

Name:_____        Name: _____

Title: _____        Title: _____

## EXHIBIT A

### LIST OF CONSULTANTS

Mike Flynn, Chief Executive Officer

Jeffery Nyberg, Controller

Mary A. Brand (Tully), AP Billing Coordinator

Catherine S. Curylo, FVS Generalist

Justyna Kolosinski, Medicare Billing Specialist

Mona C. Patel, Medicare Billing Specialist

Donatella M. Peri, Billing Coordinator

Pamela M. Peri, Manager of Accounts Receivable

Jeffery A. Schweitzer, Finance Manager

Marilyn Torres, Medicaid Billing SpecialistIndividuals who may replace those consultants in their positions with buyer should any of the consultants leave during the term

92910212.5

**EXHIBIT B**

DUTIES OF CONSULTANT

1. Billing and Collections of Accounts Receivable

2. Assistance with filing tax returns, financial reporting, and cost reports

3. Assistance with the daily operations and winddown of the Company

4. Mike Flynn to act as the leased interim CEO of Company

5. Assistance with Company operations following sale to Buyer